THE HONORABLE THOMAS S. ZILLY
Trial Date: September 15, 2025

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| ROSE JOHNSON, as the Personal Representative of the ESTATE OF RYAN M. SMITH on behalf and all beneficiaries MARK SMITH, KAHLEENA A. SMITH, LUKE-MICAH JOHNSON, JALONE JOHNSON, and ROSE JOHNSON, and ROSE JOHNSON, individually,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF SEATTLE, a municipal corporation; CHRISTOPHER MYERS, an individual; RYAN BEECROFT, an individual; DANIEL JOHNSON, an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | No. 2:22-CV-00609-TSZ<br><br>THE PARTIES' JOINT SUBMISSION RE MOTIONS IN LIMINE<br><br>NOTED ON MOTION CALENDAR: **July 2, 2025** |

## I.    INTRODUCTORY STATEMENT

This lawsuit arises from a May 8, 2019, officer-involved shooting that resulted in the death of Ryan Smith. Four Seattle Police Officers, including Defendant Officer Christopher Myers and Defendant Officer Ryan Beecroft, responded to a 911 call from Mr. Smith's girlfriend. The officers responded to the call and demanded entry into the apartment.   Mr.

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

Smith did not open the door and officers kicked it in, revealing Mr. Smith standing in the hallway of his apartment with a knife in his right hand. The parties dispute the characterization of the events that followed, but the incident resulted in both Officer Myers and Officer Beecroft firing their guns at Mr. Smith. The encounter is captured on police body-worn video.

Plaintiff Rose Johnson has four pending claims: (1) 42 U.S.C. § 1983 excessive force claims against Officer Myers; (2) a § 1983 excessive force claims against Officer Beecroft; (3) a § 1983 *Monell* claim against the City of Seattle (subject to the Defendants' motion for summary judgment noted for hearing July 18, 2025); (4) negligence claim asserted against the City of Seattle; and (5) outrage against the City. The Court previously dismissed her Fourteenth Amendment claims, negligence claims asserted against the individual defendants, negligent training/supervision claim, WLAD discrimination claim, and Washington State constitutional claim. (See dkt. #19; 25; 57; 63.)

## II.    AGREED MOTIONS IN LIMINE

- **Prior Rulings in this Case:** The parties agree that the Court should prohibit evidence of comments regarding claims that have previously been dismissed, positions taken by the parties in motions practice, or the Court's pre-trial rulings, including the ruling on these motions in limine. *See* FRE 401, 402, and 403.

- **The Golden Rule:** The parties agree that the Court should prohibit the parties from suggesting to the jurors that they should put themselves in the place of any of the parties or that they should reach a decision or award that they would want or expect if they were in the position of one of the parties. See *Minato v. Scenic Airlines, Inc*., 908 F.2d 977, at *5 (9th Cir. 1990); *Meabon v. State*, 1 Wn. App. 824 (1970).

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN
LIMINE - 2
2:22-CV-00609-TSZ

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

- **Disclosing Witnesses:** The parties agree to provide at least 24 hours before disclosing witnesses who will testify the first day of trial and to disclose other witnesses no later than 6:00 p.m. the day before the witness will be called.

- **Excluding Witnesses from the Courtroom:** The parties agree that the Court should order witnesses excluded from the courtroom until their testimony is complete.  See FRE 615.

- **Limiting Lay Witness Testimony:** The parties agree that the Court should prohibit lay witnesses from offering personal opinions, conclusory statements, assumptions, or speculation, including speculation about why someone else did something.  Lay witness testimony should be limited to their personal knowledge.  See FRE 602.

- **Expert State-of-Mind Testimony:** The parties agree that the Court should also prohibit expert witness from speculating about the motivations or the state of mind of a party.  *See Astrazeneca LP v, Tap Pharmaceutical Prod., Inc*., 444 F. Supp. 2d 278 293 (D. Del. 2006) ("Expert witnesses are not 'permitted to testify... regarding (the defendant's) intent, motive, or state of mind, or evidence by which such state of mind may be inferred.'"); *DiBella v. Hopkins*, 2002 U.S. Dist. LEXIS 20856, at * 9 (S.D.N.Y. 2002) ("(M)usings as to defendants' motivations would not be admissible if given by any witness - lay or expert."); *Kotla v. Regents of University of Cal*., 115 Cal.App.4th 283, 293 (2004) ("Absent unusual facts, it must be presumed that jurors are capable of deciding a party's motive for themselves without being told by an expert which finding on that issue the evidence supports.").

- **Requests for Information in Front of the Jury:**  The parties agree that the Court should preclude the parties from making requests or demands for statements, medical examinations, or other information, including documents that either party may have in their

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN
LIMINE - 3
2:22-CV-00609-TSZ

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

possession, in front of the jury. *See* FRE 403. The Court should also require the parties to request permission from the Court, outside the presence of the jury, if that party wishes to ask a witness to participate in a physical demonstration during questioning.

- **Evidence Related to Litigation-Induced Stress:** The parties agree that the Court should exclude from trial any evidence related to the litigation-induced stress experienced by any of Mr. Smith's family members or by any of the involved officers. Stress resulting from litigation is not recoverable, the parties' litigation-induced stress is not otherwise relevant, and this type of testimony could be unfairly prejudicial. *See e.g. Clark v. United States*, 660 F. Supp. 1164 (W.D. Wash. 1987), *aff'd*, 856 F.2d 1433 (9th Cir. 1988); FRE 401, 402, and 403.

- **Evidence of Previous Damages Amounts Claimed in Litigation:** The parties agree that the Court should exclude from rial any questions, arguments, or evidence related to Plaintiffs' Statements of Damages or similar information about amounts claimed by Plaintiffs, through their counsel, pre-suit, as part of mediation efforts, or as part of litigation. FRE 401, 402, 403, and 408.

- **Exhibits in Opening Statements:** The parties agree that the Court should allow them to use exhibits in opening statements that have been agreed upon by the parties in the Pre-Trial Order and/or other exhibits agreed upon by the parties or approved by the Court in advance of opening statements. The Court should also require the parties to exchange any exhibits or illustratives the parties plan to show the jury during opening statements in advance of opening statements.

- **References to Attorney's Fees, Employment Agreements, Tax on Recovery, Impact of Jury Award on Taxpayers, Insurance, or Who Would Be Paying**

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN LIMINE - 4
2:22-CV-00609-TSZ

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

**Any Punitive Damages:** The parties agree that the Court should prohibit the parties from making any reference to attorney's fees, employment agreements, tax on recovery, the impact a jury award may have on taxpayers, insurance, or who would be paying punitive damages, in the event the jury was to award them. FRE 401, 402, 403, and 411.

• **Undisclosed Witnesses and Evidence:** The parties agree that the Court should prohibit them from offering evidence or calling witnesses at trial no previously disclosed in discovery.

• **Comments by Counsel, Except for closing argument:** The parties agree that the Court should prohibit counsel from commenting on the evidence or otherwise arguing their case to the jury, with the exception of closing arguments, when argument by counsel is appropriate.

• **Asking the Officers if They are Remorseful or If They Would Do Anything Differently:** The parties agree that the Court should prohibit counsel from asking involved offers if they are remorseful, if they feel guilty, how this event has impacted them, whether they were disciplined for this incident, or whether they would do anything differently if they could go back in time.

• **Statements, Evidence, or Argument Suggesting that Mr. Smith Experienced Pre-Death Conscious Pain or Suffering:** The parties agree that there is no evidence that Mr. Smith suffered any pre-death conscious pain or suffering after he was shot by police and that the Court should therefore exclude any suggestion that he did. See FRE 402, 402, and 403.

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN
LIMINE - 5
2:22-CV-00609-TSZ

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

### III.    DISPUTED MOTIONS IN LIMINE

**PLAINTIFFS' MOTIONS**

> **1.    Plaintiffs' Motion to Call Defendants in Plaintiffs' Case-in-Chief and Examine Through Leading Questions by Plaintiffs' Counsel.**

Plaintiffs will call Defendants in their case-in-chief. The court should allow leading questions "…when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party." Fed. R. Evid. 611(c)(2). Counsel for Plaintiffs should therefore be permitted to interrogate defendant witnesses through leading questions as they are adverse parties.

Defendants' Response

Defendants defer to the Court with respect to whether the Court permits Plaintiff's counsel to ask leading questions of Officer Myers or Officer Beecroft if called in Plaintiff's case-in-chief.

> **2.    Plaintiffs' Motion to Preclude Defendants from Asking Leading Questions to Law Enforcement Officers.**

The Court should preclude Defendants from asking leading questions to Seattle Police Department personnel under Fed. R. Evid. 611, including during the Defendants' cross-examination of such witnesses. A party cannot ask itself leading questions. Under federal evidence law, a party does not have an absolute right to ask leading questions just because the examination is a cross-examination. Fed. R. Evid. 611(c); *Mitchell v. United States*, 213 F.2d 951 (9th Cir. 1954), Cert. denied, 348 U.S. 912, 75 S.Ct. 290, 99 L.Ed. 715 (1955). Testimony from law enforcement officers during cross-examination would be "cross-examination in form only and not in fact, as for example the 'cross-examination' of a party *by his own counsel* after being called by the opponent (savoring more of redirect) …"

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN
LIMINE - 6
2:22-CV-00609-TSZ

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

Advisory Committee's Note to Fed. R. Evid. 611(c) (emphasis added).

<u>Defendants' Response</u>

If Plaintiff calls non-defendant witnesses in her case-in-chief, defense counsel should be permitted to ask leading questions during their cross-examination. These witnesses are not hostile, nor are they parties to this case.

### 3. Plaintiffs' Motion to Prohibit and Exclude any Mention or Reference to any drug and/or alcohol use or abuse by Decedent.

Plaintiff anticipates that Defendants may incite the jury by suggesting or implying that Ryan Smith may have used or abused drugs and/or alcohol. This notion would be highly prejudicial to Estate of Ryan Smith and/or the Plaintiffs and should be excluded. ER 401, ER 403. Any evidence, testimony or argument concerning any drug or alcohol abuse by Ryan Smith offers nothing of probative value to the issues to be decided in this case. This unrelated information is potentially prejudicial and can create confusion. This evidence is not admissible, FRE 401-404, 608. Here, the defense may propose to introduce evidence of Ryans Smith's drug or alcohol abuse in prior years, which has no bearing on this case and should be inadmissible. *See Kramer v. J Case Mfg. Co.* 62 Wash. 544, 815 P.2d 798 (Div. 1 1991) (holding that trial court abused its discretion when it allowed inquiry into plaintiffs' prior substance abuse). *See also State v. Grier,* 168 Wash. App. 635 (Div. 2, 2012).

Further, as discussed below, toxicology anticipated to be used by the Defense is inadmissible.

<u>Defendants' Response</u>

Mr. Smith's intoxication on May 8, 2019, is relevant, probative, and not unfairly prejudicial under the circumstances of this case.

First, Mr. Smith's decision to drink a significant amount of alcohol over the course of

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN LIMINE - 7
2:2-CV-00609-TSZ

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

May 7, and May 8, 2019, to the point that his intoxication was likely to influence his behavior during the course of his assault on Ms. Nolan and during the police response to that incident are part of the totality of the circumstances the jury must consider when determining whether the defendant officers acted reasonably when using force against him. See *Barnes v. Felix*, 145 S. Ct. 1353, 1356 (2005) ("To assess whether an officer acted reasonably in using force, a court must consider all the relevant circumstances, including facts and events leading up to the climactic moment). While the officers may not have known that Mr. Smith had been drinking when they responded to this event, they knew that was a possibility (especially because they were responding to a domestic violence call), and Mr. Smith's intoxication corroborates the officers' perceptions that he was not compliant and was not likely to become compliant before they fired their weapon. For example, Officer Beecroft testified that, when he looked into the apartment after the door was kicked in, he saw Mr. Smith standing there with a "1,000-yard stare" and eyes "glassed over." Officer Beecroft did not know was not that he was drunk, but that Mr. Smith looked "quite terrifying" and "quite alarming." This perception is consistent with Mr. Smith having consumed so much alcohol (he had a BAC of .360) that he would not appear or behave like a typical subject and, in fact, would be "quite terrifying." Officer Beecroft and Officer Myers would be unfairly prejudiced if the Court prohibited the jury from hearing this corroborating evidence in the face of Plaintiffs' allegations that they overreacted, that they did not give Mr. Smith enough time to comply, and/or that Mr. Smith was complying or trying to comply before they shot him.

Second, the fact that Mr. Smith was drinking alcohol and his level of intoxication on May 18, 2019, are relevant to Defendants' affirmative defenses of assumption of risk, contributory fault, and the intoxication defense under RCW 5.40.060(1). Plaintiff brings a

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN LIMINE - 8
2:22-CV-00609-TSZ

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

common law negligence claim, putting each of these defenses and Mr. Smith's alcohol intoxication directly at issue. For instance, RCW 5.40.060(1) provides a complete defense to the negligence claim if the jury finds Mr. Smith was intoxicated and was more than 50% at fault. The fact that Mr. Smith was heavily intoxicated while engaged in a domestic assault against his girlfriend and during the course of the police response is a fact and it is not unfairly prejudicial.

Finally, Mr. Smith's history with alcohol abuse is relevant to the loss of consortium claims brought by his statutory beneficiaries. His alcohol consumption was a driving factor in his relationship with his mother, who did not allow him to drink in her home, as well as his relationships with his father and brothers. His alcoholism hampered his ability to work and live on his own, and it was also a key factor in his relationship with Katy Nolan. She reported, "alcohol is his life" and that he was "a terrible drinker" and "an angry drunk." She wanted him to stop drinking and to financially contribute to their joint expenses. Additionally, Mr. Smith had a history of being angry and/or physically abusive when he had been drinking. Mr. Smith's alcoholism is a significant component of his life struggles and his pattern of domestic violence. It also corroborates what likely happened on May 8, 2019, when Ms. Nolan told him he had to move out of their apartment, which triggered him to drink excessive amounts of alcohol and engage in the behavior that caused Ms. Nolan to call 911. If Plaintiff is asking the jury to value the lost relationships between Mr. Smith and his statutory beneficiaries, the jury should be entitled to hear all the evidence related to Mr. Smith's life and relationships, including the good and the bad; his attributes and his struggles. The Court should deny Plaintiff's attempt to sanitize the facts of the case to paint a completely distorted picture of what occurred on May 18, 2019.

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN
LIMINE - 9
2:22-CV-00609-TSZ

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

### 4. Plaintiffs' Motion to Exclude References to Ryan Smith Being Impaired by Drugs and/or Alcohol During the encounter with Defendant.

Intoxication of a suspect, if unknown to the officer at the time, is not a factor that can be considered in evaluating the reasonableness of the officer's use of force. In *Hayes v. Cty. of San Diego,* 736 F.3d 1223 (9th Cir. 2013), the court explicitly stated that under the framework established by *Graham v. Connor*, evidence of which the officers were unaware, such as the suspect's intoxication, cannot be considered when analyzing the objective reasonableness of the officers' conduct *Id.* The analysis is confined to the totality of circumstances as perceived by the officer at the time, without the benefit of hindsight or knowledge of facts unknown to the officer, such as the suspect's intoxication *Seidner v. De Vries*, 39 F.4th 591, 596 (9th Cir. 2022), *Rice v. Morehouse,* 989 F.3d 1112 (9th Cir. 2021).

Under the Fourth Amendment's reasonableness standard, claims of excessive use of force by law enforcement while seizing a person are to be analyzed based on the circumstances known to the officer at the time of the incident. Evidence is only relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action. ER 401. Since the officers were unaware of the suspect's intoxication at the time the force was used, this information could not have factored into the officer's decision-making process and is therefore irrelevant to the assessment of whether the officer's actions were reasonable under the circumstances. ER 401. Irrelevant evidence is not admissible. ER 402.Even if the Court were to find that evidence of the suspect's intoxication has some minimal relevance, such evidence should still be excluded because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. ER 403. Introducing evidence of the suspect's intoxication would likely lead the jury to improperly focus on the suspect's

Keating, Bucklin & McCormack, Inc., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

condition rather than on the reasonableness of the officer's actions based on what the officer knew at the time. Any Reference to Ryan Smith's intoxication or level of intoxication should be excluded.

Defendants' Response

Defendants do not content that Officer Myers or Officer Beecroft knew that Mr. Smith was intoxicated or that his potential intoxication factored into their decision to use deadly force.  However, his intoxication is part of the totality of the circumstances leading up to the event, and it corroborates Officer Myer's observations of Mr. Smith (1,000-yard stare and glass eyes) and their conclusion that he was not likely to comply with commands if they gave him more time.  It also goes to the veracity of Ms. Nolan's testimony and the facts and circumstances of the assaultive behavior by Mr. Smith that led to her calling 911.  If the Court excludes evidence that Mr. Smith was drinking and the extent of his intoxication, it would wholly eliminate the ability of the Defendants to put on evidence that demonstrates that Katy Nolan is being truthful.  Ms. Nolan will testify that Mr. Smith's behavior changed when he drank.  He would 'become a different person" when he drank and would become "scary."  Significantly, she also testified he would become violent with her when he drank.  If the Court excludes evidence of Mr. Smith's intoxication and the extent to which he was intoxicated, it would be eliminating a critical piece of the totality of the circumstances.  It explains, in part, *why* Mr. Smith was behaving the way he was toward Ms. Nolan and the officers.

Without this evidence that corroborates Ms. Nolan's testimony about Mr. Smith and how his behavior would change while under the influence, Plaintiff may insinuate or the jury may speculate that Ms. Nolan was not credible about Mr. Smith's conduct.  Further, it is well-known that alcohol intoxication can cause aberrant, unpredictable, and assaultive behavior.

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

This evidence is therefore relevant and probative of the officers' perception of the threat posed by Mr. Smith. Fed. R. Evid. 401, 403. Regardless, even if the Court were to determine that Mr. Smith's intoxication is inadmissible on the Fourth Amendment excessive force claims, there can be no dispute his intoxication is directly relevant to Plaintiff's negligence claim and Defendants' affirmative defenses to that negligence claim. The Court should therefore deny this motion.

### 5. Exclude Evidence, Testimony or Argument Concerning Opinions, Diagrams, and Animations by Defense Expert Dr. Ries.

Because of expected rulings on these motions in limine, and the fact Ryan Smith's alleged intoxication and/or intoxication level is not relevant, Dr. Ries' opinions should be excluded. If the Court finds that Dr. Ries' opinion should not be excluded, no evidence of a specific level or degree of intoxication should be allowed into evidence unless the defense can prove compliance with statutory standards for testing and admissibility.

<u>Defendants' Response</u>

The Court should deny this motion in limine as untimely, because it should have been filed no later than February 8, 2024, as a *Daubert* motion related to expert testimony. (Minute Order, dkt. #53.) Plaintiff did not request an extension to this deadline, nor has plaintiff explained why this attempt to exclude Dr. Ries' testimony at trial was not brought until now. Fed. R. Civ. P. 6(b) provides "[w]hen an act may or must be done within a specified time, the court may, ***for good cause***, extend the time:

> (A) with or without motion or notice if the court acts, or a request is made, before the original time or its extension expires; or
> (B) on motion made after the time has expired if the party failed to act ***because of excusable neglect***.

Fed. R. Civ. P. 6(b) (effective December 1, 2007)(emphasis added).

Keating, Bucklin & McCormack, Inc., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

Fed. R. Civ. P. 16(b)(4) also holds that a case schedule order may be modified "only for good cause and with the judge's consent." The common law acknowledges this principle.

> In general, the pretrial scheduling order can only be modified "upon a showing of good cause." *Id*. at 608 (citing Fed. R. Civ. P. 16(b)). The pretrial schedule may be modified "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id*. at 609. If the party seeking the modification "was not diligent, the inquiry should end" and the motion to modify should not be granted. *Id*.

*Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

"Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992). "Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.*

Plaintiff offers no explanation at all as to why she waited for a year and a half to bring this motion. She therefore fails to show any cause, much less "good cause."

In the event the Court considers this untimely motion, it is without merit. First, as explained above, Mr. Smith's intoxication on May 8, 2019, is relevant to all claims and affirmative defenses. Second, Dr. Ries should be permitted to testify regarding Mr. Smith's BAC of .360, because it is the type of evidence experts like him typically rely upon. Fed. R. Evid. 703. If Plaintiff believes Mr. Smith's BAC, as set forth in the toxicology report, is not reliable, her counsel can cross-examine Dr. Ries on that topic. It goes to the weight, not the admissibility, of the BAC reading and/or Dr. Ries' testimony about it. To assist the Court in analyzing this motion, Dr. Ries' expert report and CV are attached here as Exhibit A.

**6. Plaintiffs' Motion to Preclude, Prohibit or Allow any Mention, Testimony or Argument concerning any Statements Katy Nolan Made before the Fatal Shooting of Ryan Smith.**

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN LIMINE - 13
2:22-CV-00609-TSZ

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

Plaintiffs anticipate that defendants may attempt to bring in statements made by Katy Nolan, which were made before the shooting. Allowing these statements is highly prejudicial to Estate Ryan Smith and/or the Plaintiffs and should be excluded. ER 401, ER 403. The officers involved in the incident were unaware of these witness accounts at the time they used force against the decedent. The reasonableness of the officers' use of force must be judged from the perspective of a reasonable officer on the scene, based on the facts and circumstances known to the officer at the time of the incident, not with the 20/20 vision of hindsight. Information unknown to the officers at the time of the incident is irrelevant to determining whether their use of force was reasonable under the circumstances they faced.

Testimony about events that occurred prior to the officers' arrival, which the officers did not know about when they used force, fails the relevance test under Federal Rule of Evidence 401 because such information could not have informed the officers' decision-making. Even if the Court were to find such testimony marginally relevant, it should be excluded under Federal Rule of Evidence 403 because its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons.

Allowing such testimony would risk the jury evaluating the officers' conduct based on information the officers did not possess, rather than focusing on what the officers knew at the time they made their split-second decisions.

<u>Defendants' Response</u>

The Court should deny this motion for a number of reasons. First, the motion is vague with respect to which statements Plaintiff is seeking to exclude, but presumably the motion is requesting that the statements Ms. Nolan made to the 911 call-taker be excluded from trial.

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN LIMINE - 14
2:22-CV-00609-TSZ

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

This request makes no sense.  Plaintiff is asserting a negligence claim against the City with respect to the manner in which the 911 dispatcher relayed information to law enforcement over the police radio.  It is not clear how the jury could evaluate that claim without hearing the 911 call.  And if the jury is precluded from hearing the 911 call, the jury would be confused and left to speculate as to why that might be. If Plaintiff wishes to pursue her claim related to 911 dispatching services, the 911 recording should be admissible.

Second, regardless of the claim related to dispatching services, the 911 call is a key component of the factual events and the information she relayed, and how she relayed it corroborates the officers' understanding that this was a serious domestic violence call that justified their response.  It is part of the totality of the circumstances that should be considered as part of an excessive force analysis.  Moreover, Plaintiff's counsel have continually tried to mischaracterize the 911 call by overemphasizing any statements in which she appears to be seeking help for Mr. Smith and underemphasizing that she called 911 to report that her boyfriend was trying to kill her and that she was terrified about what might happen to her. Plaintiff's counsel should not be permitted to sanitize the trial such that the jury is precluded from hearing the truth about what happened.  Ms. Nolan's call to 911 is incredibly reliable evidence, because it is real time recording of events as they unfolded – not as later described by a witness or lawyer in court.  The 911 recording also corroborates that Mr. Smith could hear officer commands from inside the apartment, because those commands are picked up on the 911 audio recording while Ms. Nolan was on the phone and inside the bathroom in her apartment.  The jury will have to hear this portion of the 911 call, and, again, it would make no sense to the jury why they could not hear the entire recording.

Everything that happened on May 7, 2019, and May 8, 2019, reported by Ms. Nolan,

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN LIMINE - 15
2:22-CV-00609-TSZ

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX:  (206) 223-9423

is directly relevant to Defendants' assumption of risk, contributory fault, and intoxication affirmative defenses.  The officers did not have to know, for example, that Mr. Smith consumed a large quantity of alcohol or that he was refusing to leave Ms. Nolan's apartment after she asked him to move out in order for those facts to inform the jury's conclusions about Mr. Smith's proportionate fault for the following events.  The Court should deny this motion.

**7.    Plaintiffs' Motion to Preclude, Prohibit or Allow any Mention, Testimony or Argument concerning any Statements Katy Nolan Made after the Fatal Shooting of Ryan Smith.**

Plaintiff anticipates that defendants may attempt to bring in statements made by Katy Nolan, which were made after the shooting. Allowing these statements is highly prejudicial to Estate Ryan Smith and/or the Plaintiffs and should be excluded. ER 401, ER 403. *See* above argument.

Defendants' Response

The Court should deny this motion in limine for the very same reasons.  It is vague with respect to the specific statements Plaintiff believes should be excluded, the statements may be relevant to understanding the totality of the circumstances that led up to the shooting incident, and the statements will likely be relevant to Defendants' affirmative defenses.  This evidence may also be relevant to Ms. Nolan's credibility.

**8.    Plaintiffs' Motion to Preclude, Prohibit or Allow any Mention, Testimony or Argument and/or playing the 911 call made by Katy Nolan.**

Plaintiffs anticipate that defendants may attempt to bring in the 911. Allowing call into evidence is highly prejudicial to Estate Ryan Smith and/or the Plaintiffs and should be excluded. ER 401, ER 403. Defendant Myers and Defendant Beecroft testified that if they heard the complete 911 call it would have been after the fatal shooting of Mr. Smith. (Dec. of Rome Ex. 11, Dep of Myers and Ex. 2, Dep of Beecroft). Information unknown to the officers

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN
LIMINE - 16
2:22-CV-00609-TSZ

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

1
2
3

at the time of the incident is irrelevant to determining whether their use of force was reasonable under the circumstances they faced, therefore the 911 call has no relevance in this matter and should be excluded.

4

### Defendants' Response

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

For all the reasons set forth in the previous responses to motions in limine, the Court should deny this motion and allow the jury to hear the 911 call at issue in this case. Plaintiff places the 911 call squarely at issue by bringing a negligence claim *based on the handling of the 911 call*. See, dkt. 20, pp. 6-7, 12, 19. Plaintiff claims the call-taker and dispatcher negligently handled the call. It would be patently absurd to allow such a claim to go forward while at the same time not allowing the actual 911 call to be played for the jury to hear. This motion borders on frivolous under Fed. R. Civ. P. 11. The call is also admissible for the Fourth Amendment claims. Plaintiff should not be permitted to present an overly sterilized version of events that wholly ignores the reason for Ms. Nolan's call for police help, the conduct of Mr. Smith that prompted that call, or the urgency with which Ms. Nolan made that call. The jury will be asked to evaluate Ms. Nolan's credibility, the officers' credibility, Ms. Johnson's credibility, and the 911 dispatcher's credibility. The contents of Ms. Nolan's 911 affects all of those determinations and is not unfairly prejudicial. It is a key component of the totality of the circumstances.

21
22

**9. Plaintiffs' Motion to Exclude Reference to Katy Nolan or Any other Witness as "Victim."**

23
24

The Court should not allow any witness to be referred to as "victim," because of the prejudicial nature of the term and lack of any conviction of Ryan Smith for alleged abuse.

25

### Defendants' Response

26
27

This case involves an allegation of serious domestic violence assault in which Ms.

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN LIMINE - 17
2:22-CV-00609-TSZ

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

Nolan was undisputedly the victim.  That Mr. Smith was not convicted of domestic violence misses the point.  Police officers are trained to respond to domestic violence situations in specific ways, and the basis for many of the officer decisions at issue in the lawsuit are the officers' understanding and believe that Ms. Nolan was a victim of domestic violence, that she was trapped inside her apartment with the aggressor, and that she and the officers reasonably feared her life was danger.  The Court should not prohibit counsel or testifying police officers form referring to Ms. Nolan as a victim when it would otherwise be appropriate to do so within the context of their testimony.  The Court should deny this motion without prejudice, such that the Court may revisit the issue if the Court becomes concerned that the language used a trial crosses the line.  The Court should deny the motion with prejudice with respect to comments by counsel during closing arguments.

### 10. Exclude Evidence, Testimony or Argument, including Animations, by Defense Expert William Neale.

One of the defense experts is William Neale, whom defendants hired to create animations depicting their version of the events on the day of the shooting.  Several of his aminations that Defendants seek to admit into evidence as substantive exhibits should be excluded because they are irrelevant, lack appropriate foundation and unfairly prejudicial as it impermissibly bolsters Defendants versions of events.

"Because of its dramatic power, trial judges should carefully and meticulously examine proposed animation evidence for proper foundation, relevancy and the potential for undue prejudice." *Robinson v. Missouri Pacific R. Co.,* 16 F.3d. 1083, 1088 (10th Cir. 1994); *see also id.* ("[N]ot only is the danger that the jury may confuse art with reality particularly great, but the impressions generated by the evidence may prove particularly difficult to time" (quoting 2 McCormick on Evidence 19 (4th ed. 1992)).  In this case, the

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

Court should not allow the Defendants to introduce the animations as evidence or play them for the jury as demonstrative exhibits based on FRE 401, 403, 702. The animations should also be excluded as they are misleading. Even if the animation were to be shown to the jury only as illustrative exhibits, their probative value in illustrating what Officer Michael Spaulding and Officer Scott Miller claims to have seen is substantially outweighed by a danger of unfair prejudice and misleading the jury. FRE 403. Most importantly, the animations do not fairly and accurately depict the moments leading up to the shooting. There are actual video recordings, and they depict what occurred. The animations look nothing like the video. The animations do not accurately depict the environment and setting, how the scene was lit, the posture of Ryan Smith, how Ryan Smith was yelled conflicting and contradictory commands given by the Seattle Police Officers, and how Ryan Smith was not advancing on them than what is depicted in the animations, or how Ryan Smith collapsed as he was shot an excessive amount of time without warning. These inaccurate animations create a serious risk that the jury will "confuse art with reality" and focus on what the Neale animations show rather than what the testimony proves. *See Robinson,* 16 F.3d at 1088.

For these reasons, the Court should exclude the animations from use as either substantive or illustrative exhibits. Credibility determinations are the province of the jury. *Creach v. Spokane County,* cv-11-432-RMP, 3013 WL 12177099, at *2, (E.D. Wash. 2013); *Costa v. Desert Palace, Inc.,* 299 F.3d 838, 859 (9th Cir. 2002). Under FRE 702, the credibility of a witness may not be addressed by an expert. The determination of whether the officer's version of events is credible is for the jury to decide, not for Mr. Neale to comment on, mention, attempt to put into any type of animation, or argue about. For the reasons set

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN LIMINE - 19
2:22-CV-00609-TSZ

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

forth above, the Court should exclude or limit the expert opinion, and testimony, if any of Mr. Neale.

Defendants' Response

The Court should deny this motion for a number of reasons. First, Mr. Neale has not generated any recreations or animations. The evidence they seek to exclude does not even exist in this case. As set forth in his report and declaration (dkt. 34), Mr. Neale synced the 911 call to the body-worn video, synced the body-worn videos with each other, and diagramed the apartment and distance traveled by Mr. Smith, as well as his distance from the officers at certain times. This evidence is unrebutted by any expert and is undoubtedly relevant and probative. Fed. R. Evid. 401, 403. Second, this motion is untimely. This amounts to a *Daubert* motion challenging the admissibility of Mr. Neale's work and opinions. As such, it had to be filed by February 9, 2024, as briefed in Defendants' response to Plaintiff's Motion in Limine No. 5, above. Last, this motion appears to be a copy and paste from motions in limine filed by the plaintiffs in the *Taylor, et al v. City of Seattle, et al.*, U.S. District Court Cause No. 18-00262-TSZ matter filed in this court. *See, dkt. 111 at 6-8 in that matter.* As this Court knows, Officers Spaulding and Miller were defendants in that case, and William Neale was an expert for the defendants. Officers Spaulding and Miller are not involved in this case at all. The Court should deny this motion.

**11. Exclude Evidence, Testimony or Argument Concerning Defense Expert Rachael Doniger.**

It is improper conclusory evidence for Defense witness Doniger to testify to her opinion "that the call taker, Daniel Johnson, and dispatcher, Stephanie Rezentes, conducted themselves professionally and properly processed and dispatched the call for help from the victim, Katy Nolan, meeting or exceeding industry and City of Seattle standards."

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN LIMINE - 20
2:22-CV-00609-TSZ

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

The Court serves as the gatekeeper for expert testimony and must ensure that any expert testimony admitted is both relevant and reliable. Expert testimony is only admissible if: (a) the expert's specialized knowledge will help the trier of fact understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. ER 702.

Ms. Doniger's proposed opinion constitutes an improper conclusory opinion that usurps the role of the jury by simply telling them what result to reach regarding whether the call taker and dispatcher met the applicable standards of care. *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998 (9th Cir. 2004)

While Federal Rule of Evidence 704 permits expert testimony that embraces an ultimate issue, such testimony must still satisfy all other requirements for expert testimony, including that it be helpful to the trier of fact and based on sufficient facts and reliable methodology.

Ms. Doniger's conclusory opinion that Johnson and Rezentes "conducted themselves professionally" and "properly processed and dispatched the call" fails to provide any specialized knowledge that would assist the jury in understanding the evidence or determining a fact in issue. The jury should ultimately decide if Johnson and/or Rezentes failed to properly process the dispatch call. The expert testimony does not assist the trier of fact understand the evidence or determine a fact in issues. The risk of prejudice and/or misleading the jury is outweighed by any possibility of probative value. ER 403. Therefore, Ms. Doniger's testimony should be excluded.

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN LIMINE - 21
2:22-CV-00609-TSZ

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

Defendants' Response

The Court should deny this motion. First, the motion is untimely, as it is a *Daubert* motion challenging the admissibility of Ms. Doniger's work and opinions. As such, it had to be filed by February 9, 2024, as briefed in Defendants' response to Plaintiff's Motion in Limine No. 5, above. Second, Ms. Doniger's opinion that Mr. Johnson and Ms. Rezentes conducted themselves appropriately and properly handled the 911 is relevant, probative, and admissible. Fed. R. Evid. 702. Plaintiff concedes Ms. Doniger is qualified to opine on the handling of the 911 call. See, Defendants' Exhibit B, appended hereto. Expert witness testimony is proper under Rule 702 only if it illuminates matters not within the common knowledge of the average juror. *United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002). Contrary to Plaintiff's blanket assertion, taking 911 calls and dispatching information from those calls is not within the common knowledge of a jury. It is a highly specialized and technical job that requires unique training and equipment beyond the knowledge of the average juror.

Ms. Doniger's testimony that Mr. Johnson and Ms. Rezentes acted consistently with accepted standards and practices for handling 911 calls is relevant and admissible. See, eg. *Fontana v. City of Auburn*, C13-0245-JCC, 2014 WL 4162528, at *6 (W.D. Wash. Aug. 21, 2014), *aff'd in part*, 679 Fed. Appx. 613 (9th Cir. 2017) ("While experts may permissibly opine as to standard law enforcement practices and whether defendants' conduct is in accord with those practices, they may not offer legal conclusions that are solely within the Court's or the fact-finder's province.") Ms. Doniger should be permitted to testify as to what the standard practices are for dispatching 911 calls and whether Mr. Johnson and Ms. Rezentes complied with those practices in handling the calls at issue here.

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

**12. Exclude Evidence, Testimony or Argument Concerning Defense Expert Rachael N. Frost**

Defendants have requested Rachael Frost to opine on the following:

- Is it general practice in law enforcement training to include content about potential dangers in domestic abuse situations; and are those dangers present to victims, suspects, police, and the public?

- Katy Nolan's report to 911 indicates a continual and/or serious domestic violence event that required immediate police action.

- There was exigency for the officers to enter the apartment belonging to Katy Nolan and Ryan Smith as soon as the officers arrived.

An expert may generally testify about the procedures, policies, and standards used by law enforcement. See *Davis v. Mason Cnty., 927 F.2d 1473, 1484-85* (9th Cir. 1991*)* and ER 704a clarifies that "[a]n opinion is not objectionable just because it embraces an ultimate issue." But "expert witness cannot give an opinion as to [their] legal conclusion, i.e., an opinion on an ultimate issue of law." *Hangarter, 373 F.3d at 1016 (9th Cir. 2004).* "[W]hen an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision but rather attempts to substitute the expert's judgment for the jury's." See *United States v. Diaz, 876 F.3d 1194, 1197 (9th Cir. 2017)* (quotation omitted). The risk of usurping the jury's role is particularly acute when the expert seeks to testify using terms with "specialized meaning in law" and where he adds his own subjective view of the disputed evidence surrounding the incident. *See Diaz,* 876 F.3d at 1199.

Frost's opinion should be excluded for several reasons. Frost's report is not helpful to the jury because no expert is needed for the jury to decide the purely factual issues. Frost's

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

opinions are based on her own view of facts that may be in dispute. The jury can decide on the credibility of evidence and witnesses if exigency existed, if this was a serious domestic violence call and if domestic violence calls are dangerous or not. Frost's opinions intrude on the role of the jury to determine what happened during the encounter. Plaintiff' concedes there as probable cause to investigate the 911 call. Additionally, each officer who arrived at the scene, including the two defendants, is anticipated to testify to their version of the facts and why they did what they did. Frost's testimony would be at best cumulative. For the reasons set forth above, the Court should exclude or limit the expert opinion, and testimony, if any of Ms. Frost.

### Defendants' Response

The Court should deny this motion.  First, the motion is untimely, as it is a *Daubert* motion challenging the admissibility of Ms. Frost's work and opinions.  As such, it had to be filed by February 9, 2024, as briefed in Defendants' response to Plaintiff's Motion in Limine No. 5, above.  Second, Ms. Frost's opinions are admissible and probative.  Fed. R. Evid. 401, 403, 702.  Rachael Frost is an investigator and police practices expert with specialized knowledge regarding domestic violence. Ms. Frost will offer three general opinions, which are set forth in more detail in her report.  Exhibit C, appended hereto.  First, she will testify that law enforcement officers are trained that domestic violence calls are some of the most dangerous calls they will respond to and they can be deadly for the victim, the officers, and the public.  *Id.* at 15-17.  This is helpful information that will assist the jury in evaluating liability and understanding why the officers acted with exigency and urgency while responding to this call.  Learning how police officers are trained not just in Seattle, but throughout the country, will help the jury as they assess the objective reasonableness of the

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN
LIMINE - 24
2:22-CV-00609-TSZ

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

officers' conduct under the Fourth Amendment and common law negligence principles. Fed. R. Evid. 401, 403.

Ms. Frost will also testify that, "Katie Nolan's 911 call indicated a significant, ongoing, and serious domestic violence event that required immediate police action." *Id*. at 18-23. That Plaintiff concedes there was probable cause to investigate the 911 call is not the end of the inquiry. This testimony is relevant and probative in light of Plaintiff's arguments that Ms. Nolan was not actually in any danger. Ms. Frost's testimony will provide insight from a domestic violence expert other than the involved officers that informs the jury as to how officers are trained to deal with these calls, which will help the jury evaluate the reasonableness of the officers' actions and whether they acted within the standard of care. Fed. R. Evid. 401.

Last, Ms. Frost's testimony as to the exigency of the situation and how the officers responded to that exigency is also relevant, probative, and admissible. Fed. R. Evid. 401, 403, 702. She is qualified to explain the reasons for the necessity for an urgent police response given the factors present here. Her testimony will provide the jury with the perspective of an expert with specialized knowledge of police practices, particularly as they pertain to domestic violence. Her role as an expert explaining the significance of certain facts and events and how the officers' responses comport with accepted police practices will help the jury understand and evaluate the reasonableness of the officers' conduct. The Court should deny this motion.

**13. Exclude Evidence, Testimony or Opinions By Defense Expert Chris Nielsen.**

Police practices expert may not offer any opinion that goes beyond explaining the industry standards relevant to the case and whether officer conduct comports with those

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

standards. *Morales v. Fry*, C12-2235-JCC, 2014 WL 12042563, at *3 (W.D. Wash. 2014) (citing *Hygh v. Jacobs*, 961 F.2d 359, 364 2d Cir. 1992). In other words, police practices experts should not indicate, in any way, whether any conduct was reasonable under the circumstances, objectively reasonable, or justified. *Id.*

Federal Rules of Evidence do not preclude an expert from opining about an ultimate issue, see ER 704(a), the Court may bar such testimony when it is not helpful to the jury, see ER 702(a), or when it might be unduly prejudicial, see ER. 403. Expert or lay testimony providing a conclusion as to whether the individual officers acted reasonably or with excessive force is improper. "Police practices experts may testify as to law enforcement standards and procedures and whether the officers' actions comported with such standards and procedures. Police practices experts may not testify whether the officers' actions were 'reasonable' or 'excessive' because those are ultimate issues left to the trier of fact." *Silva v. Chung*, No. 15-00436 HG-KJM, 2020 U.S. Dist. LEXIS 19356 (D. Haw. Jan. 31, 2020)

Here there are at least Four Seattle Police Officers that will testify, each is expected to testify what the standards and procedures are for a Seattle Police Officer and how they acted during the incident was in conformity. A non-Seattle police officer/" Expert" such as Nielsen's opinions are proper at best cumulative and not helpful to the jury. Nielsen's opinions are as follows:

> 1. ...*Reasonable police officer under the same or similar circumstances would believe Ms. Nolan as in imminent danger of being seriously injured or killed.*

This is improper testimony regarding the reasonableness of police action, and speculative if what the Police Officer believed. The police officers themselves can testify to that and the jury can determine their credibility.

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN
LIMINE - 26
2:22-CV-00609-TSZ

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

*2. A reasonable police officer under the same or similar circumstances would interpret the situation at the outset as a domestic violence even in which Mr. Smith was the perpetrator and Ms. Nolan was the victim...*

Again, this is improper testimony. First I hope the officers viewed this as a potential domestic situation that required investigation to confirm allegations not make conclusions without investigation, but also the witness and defendant officers are in the best place to tell the jury how the interpreted the situation. Neilsen's testimony is not helpful.

*3. A reasonable police officer under the same or similar circumstances would tailor all tactics, procedures, and decisions toward the paramount goal of securing Ms. Nolan's safety according to the life safety priorities discussed above.*

Witness officers can discuss their goals, and a jury will decide if reasonable.

*4. A reasonable police officer under the same or similar circumstances would believe there were exigent circumstances to enter Ms. Nolan's apartment to secure her safety. The decisions of Officers Myers and Beecroft to order Mr. Smith to open the door were consistent with generally accepted law enforcement practices, criminal procedures, and contemporary training principles. When Mr. Smith refused to open the door, the decisions of Officer Myers and Beecroft to breach Ms. Nolan's door were consistent with generally accepted law enforcement practices procedures, and contemporary training principles.*

This opinion makes an assumption that Mr. Smith refused to open the door. The only testimony of this is from Officer Myers, who claims to have seen Mr. Smith through a peep hole. Unfortunately, due to Seattle Police actions Mr. Smith cannot testify on his own behalf. A jury can listen to Officer Myers testimony and decide if Mr. Smith refused or not. Additionally, they can decide if the officers' actions were reasonable or not.

*5. Given the unavailability of breaching equipment, the exigency of the circumstances, the characteristics of the door, and the physical condition of Officers Myers and Beecroft, the breaching techniques (e.g. kicking the door), were consistent with generally accepted law enforcement practices, procedures, and contemporary training principles.*

This opinion makes the conclusion assumption that exigency was present, however a jury should be the one to decide that.

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

1
2
3
4
5

     *6. Under the circumstances, de-escalation efforts would unnecessarily delay efforts to secure Ms. Nolan's safety and place her in greater peril. A reasonable police officer under the same or similar circumstances would believe there was no meaningful opportunity to de-escalate the encounter with Mr. Smith without further endangering Ms. Nolan. The decisions of Officers Myers and Beecroft in this regard were consistent with generally accepted law enforcement practices, procedures, contemporary training principles, and Seattle Police Department policies and training.*

Again, this is an improper statement regarding reasonableness of the officers. A jury

6

can determine if it was reasonable or not to attempt to de-escalate.

7
8
9

     *7. Upon encountering Mr. Smith and identifying he was armed with a knife as reported by Ms. Nolan, the orders to show his hands, drop the knife, and get on the ground were appropriate, and consistent with generally accepted training principles, contemporary tactics, practices, and procedures.*

10

Plaintiff does not disagree, however the jury must decided if the manner of giving the

11

statements was reasonable.

12
13
14
15
16
17

     *8. When Mr. Smith refused to drop the knife and advance on the officers, a reasonable police officer under the same or substantially the same circumstances identify Mr. Smith's actions as a lethal threat. Under the totality of the circumstances, the use of less-lethal options would place responding officers in unnecessary danger and be an inappropriate inversion of the life safety priorities discussed above. Accordingly, the decision to forego less-lethal options under the circumstances was consistent with generally accepted law enforcement practices, procedures, contemporary training principles, and Seattle Police Department policies and training.*

18
19
20
21
22
23
24

This opinion only takes into account the officers testimony and should be left to the jury. Furthermore, the 9th circuit has stated in this case: "…[A] reasonable jury could equally well conclude that they [SPD Officers] acted unconstitutionally in using deadly force without warning less than six seconds after kicking down the apartment door, when Smith was standing still in his own hallway and raising his right hand in compliance with the officers' command to raise his hands." Dkt. 81 at 14.

25

     9. Does not appear to be an opinion, more a statement.

26
27

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN
LIMINE - 28
2:22-CV-00609-TSZ

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

> 10. *Under the totality of the circumstances, the decisions of Officers Myers and Beecroft to use lethal force, was reasonable, appropriate, and consistent with the law, policies of the Seattle Police Department, generally accepted training principles, contemporary tactics, practices, and procedures.*

This is the ultimate opinion that the jury will be tasked to decide. The 9th Circuit has stated that the Jury very well that the officers acted unconstitutionally. *Id.* This opinion does not help the jury to come to a decision but instructs them what to think and should not be allowed.

<u>Defendants' Response</u>

The Court should deny this motion.  First, the motion is untimely, as it is a *Daubert* motion challenging the admissibility of Mr. Nielsen's opinions.  As such, it had to be filed by February 9, 2024, as briefed in Defendants' response to Plaintiff's Motion in Limine No. 5, above.

Second, as with Mr. Neale, Ms. Donager, and Ms. Frost, Mr. Nielsen's opinions are relevant, admissible, and probative.  Fed. R. Evid. 401, 403, 702.  Defendants understand that, "police practices expert may not offer any opinion that goes beyond explaining the industry standards relevant to the case and whether officer conduct comports with those standards. *Morales v. Fry*, C12-2235-JCC, 2014 WL 12042563, at *3 (W.D. Wash. 2014) (citing *Hygh v. Jacobs*, 961 F.2d 359, 364 2d Cir. 1992).  Defendants intend to elicit testimony from Mr. Nielsen that will be framed in terms of the involved officers' compliance with standard police practices.  As set forth in more detail in his report, Mr. Nielsen is a highly qualified police practices expert who has extensive experience on patrol and in SWAT. *See, Defendants' Exhibit D hereto*.

Plaintiff asserts that the Court should wholly exclude Mr. Nielsen from testifying, simply because there are four Seattle Police officers (two of whom are Defendants Myers and

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

Beecroft), and they will each testify how what they did was consistent with police practices. By Plaintiff's logic, law enforcement defendants in civil suits would never be allowed to call police practices experts, since they have all the requisite knowledge and can explain it to the jury themselves. Plaintiff's argument ignores the fact that her entire case is premised on the fact that, despite all of the training they received, the officers acted unreasonably and inconsistently with accepted police practices. Plaintiff plans to call her own expert (subject to the Court's rulings on Defendants' *Daubert* motions) to testify that the officers did *not* act consistently with standard police practices. To not allow Defendants to call an expert who is not employed by the Seattle Police Department and who does not have a personal interest in the outcome of the litigation would be manifestly unjust. Indeed, the whole purpose of allowing police practices experts to testify is to assist the jury by providing them with objective, outside perspectives on what occurred.

The remainder of Plaintiff's arguments pertain to how Mr. Nielsen phrases his opinions. That can be addressed through proper instructions before he testifies and is not a basis for exclusion of his testimony. Defendants will be mindful to have Mr. Nielsen frame his testimony in terms of how officers are trained and whether Officers Myers, Beecroft, Knight, and Muoio's actions complied with those accepted police practices and training. The Court should deny Plaintiff's motion.

**14. Plaintiffs' Motion for All Witnesses to Appear in Civilian Clothing.**

The Court shall require that all witnesses appear in civilian clothing.

<u>Defendants' Response</u>

The Court should deny this motion. This is not a criminal matter, where attire may have bearing on the innate prejudices of the jury. Police officer witnesses may be called to

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

testify while they are on duty and should not be required to change their clothes for that purpose. The police officer defendants should also be permitted to wear their uniform for purposes of showing the jury how they appeared when they responded to the call on May 9, 2019, which corroborates their belief that Mr. Smith knew they were police and was deliberately not complying with their lawful commands.

**15. Plaintiffs' Motion to Allow Family Photos and Photos of Ryan Smith.**

The Court shall allow family photos and photos of Ryan Smith.

<u>Defendants' Response</u>

Defendants request that the Court reserve ruling on this motion in limine until Plaintiff has identified the specific photographs she intends to show and the total number of those photographs.

**16. Plaintiffs' Motion to Allow Autopsy Photos.**

The Court shall allow Autopsy Photos of Ryan Smith.

<u>Defendants' Response</u>

Defendants generally object to autopsy photos of Mr. Smith, because his cause of death is not disputed and would be cumulative and inflammatory. Defendants request that the Court reserve ruling on this motion in limine until Plaintiff has identified the specific photographs she intends to show and the reason they relevant to the issues that will be decided by the jury.

**17. Plaintiffs' Motion to Prohibit Mention of the Presentation of this Motion.**

The Court should not permit comments or suggestions the Plaintiff has excluded from proof any matter bearing on the issues in this case so that the rights of the parties to this suit are affected. *Texas Employers Ins. Ass'n v. Phillips,* 255 S.W. 2d 364 (Tex. App. 1953).

Keating, Bucklin & McCormack, Inc., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

<u>Defendants' Response</u>

The Court should reserve ruling on this motion, because it is vague and not appropriately tailored.  Defendants agree that the parties cannot comment on evidence the Court has excluded from trial or on objections made by attorneys at trial, but defense counsel should not be prohibited from arguing in closing arguments that Plaintiff failed to meet her burden of proof, failed to present testimony from an opposing expert, or otherwise dispute evidence offered by the defense.

### 18. Defendants Should Be Precluded From Implying To The Jury That They Have No Prior Record Of Misconduct Or Citizen Complaints.

Plaintiff seeks to obtain an order that the defendants cannot be permitted to suggest to the jury that they have no such prior records at all.  It is well established that where, with respect to prior alleged misconduct, a "defendant 'opens the door' to testimony about an issue by raising it for the first time himself, he cannot complain about subsequent… inquiry into that issue. *United States v. Bailleaux,* 685 F.2d 1105, 1110 (9th Cir. 1982)." *United States v. Hegwood,* 977 F.2d 492, 496 (9th Cir. 1992).

By presenting evidence or arguments suggesting to the jury the defendants have no prior record of complaints by or altercations with citizens, the defendants necessarily would alter the evidentiary balance and authorize the plaintiffs to inquire on that subject. However, given the realities of trial, plaintiffs would be hamstrung in doing so by their inability to obtain discovery and to do the necessary investigation pretrial.

<u>Defendants' Response</u>

Defendants agree that neither party should be offering any evidence at trial related to prior citizen complaints, prior misconduct, or prior discipline of any of the involved law enforcement officers in this case.  To the extent Plaintiff is arguing that her counsel should

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

be permitted to offer testimony about an officers' prior history when it is negative, but that defense counsel should not be permitted to officer testimony related to positive prior history, the Court should deny that motion.

**19. Allow Plaintiff to Argue the Conscience of the Community.**

It is permissible to ask the jury to consider what damage the Plaintiff has suffered. It is also proper to ask the jury to place themselves in the position of compensating the Plaintiff for the injuries the plaintiff sustained. *Simmonds v. Lowery,* 563 So.2d 183 (Fla. 4th DCA 1990). In *Simmonds,* the plaintiff's attorney during closing argument requested that the jury "think about what you would pay someone for one day of what you hear she [plaintiff] has to go through and for the rest of her life." There, the court found that the argument was not a "Golden Rule" violation since it simply requested the jury to consider how much they would pay the plaintiff for damages, rather than asking jurors to how much they would want to receive if it was their case. The court found that plaintiff's counsel merely asked the jury to do what jurors are required to do – that is, compensate the plaintiff for injuries sustained once a finding of liability has been made. *Id.*

<u>Defendants' Response</u>

Plaintiff is requesting that her counsel be permitted to argue "the conscious of the community," which appears to be an attempt to inflame the jury and inflate a compensatory damages award. However, the arguments seeks permission to ask the jurors to individually think about what they would pay someone for a day based upon that person's experiences. Plaintiff's counsel need do neither. While the wording of this argument was found not to violate the golden rule in a case in Florida in 1990, the language is confusing, unnecessary, and has the impact of suggesting to the jury that Plaintiff's counsel indeed wants them to

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN LIMINE - 33
2:22-CV-00609-TSZ

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

place themselves in Plaintiff's position when deciding damages. This type of overly personal, confusing, and potentially inflammatory language is not proper at any point in trial, including closing arguments. The Court should deny this motion and order Plaintiff's counsel to avoid "conscious of the community" language and to request damages from the jury without making the request unnecessarily personal.

### 20. Exclude Evidence, Testimony or Argument of Unrelated Prior Arrests, Prison Records, or Criminal Record.

Unrelated prior arrests, prison records or prior criminal record offers nothing of probative value to the issues to be decided in this case. This unrelated information is potentially prejudicial and can create confusion. Evidence which is not relevant is not admissible. ER 402. Here, the defense may propose to introduce evidence of Ryan Smith or other witnesses prior bad acts and criminal record, which Plaintiffs' hotly contest and believe it would be unfairly prejudicial erroneously admitting this type of information is both irrelevant and problematic as it has no bearing on this case whatsoever. This evidence is not admissible, FRE 401-403, 609. Here, the defense may propose to introduce evidence of Ryan Smith or other witnesses' prior arrest or criminal record, which has no bearing on this case and is inadmissible. *See U.S v. Yeagin,* 927 F.2d. 798 (5th Cir. (1991).

Defendants' Response

The Court should deny this motion in limine as vague and overly broad. It is not clear what prior arrests, "bad acts," or prison sentences Plaintiff is intending to exclude. For example, the Seattle Police contacted Ms. Nolan and Mr. Smith on April 14, 2019, when Ms. Nolan reported to a 911 call-taker that Mr. Smith was being abusive. Officer Beecroft was one of the officers who responded to that call, and there is BWV of his interactions with Mr. Smith on that date. This prior incident was relevant to the way in which Officer Beecroft

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN
LIMINE - 34
2:22-CV-00609-TSZ

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

responded to the incident on May 8, 2019, once he realized that it involved the same two people at the same apartment. Defendants contend that this encounter is relevant and admissible and should not be excluded from trial.

Additionally, Mr. Smith's history of drinking and the impact it had on his life and ability to obtain and maintain employment is wholly relevant to any claims for future economic losses sustained by estate. Fed. R. Evid. 401, 403. Mr. Smith's history of alcohol abuse is also relevant and highly probative of the claims for loss of consortium. *Conan v. City of Fontana*, EDCV 16-1261-KK, 2017 WL 8941499, at *7 (C.D. Cal. Oct. 6, 2017) (in excessive force case, court held that a substantial amount of evidence of plaintiff's criminal history and drug use was relevant to Plaintiffs' claims for emotional damages and loss of consortium). The Court should deny this motion.

### 21. Exclude Evidence, Testimony, Mention or Argument Concerning any Prior Bad Acts.

Any evidence, testimony, mention or argument concerning any prior bad acts by Ryan Smith or other Plaintiff witnesses offers nothing of probative value to the issues to be decided in this case. This unrelated information is potentially prejudicial and can create confusion. This evidence is not admissible, FRE 401-404, 608. Here, the defense may propose to introduce evidence or mention or make any argument of Ryan Smith's prior bad acts including but not limited to criminal record, police contacts, prison records, and time spent in jail. The defense may attempt to mention or argue that Ryan Smith was defiant and in trouble prior to the incident. The defense may also attempt to mention, argue or introduce evidence that Ryan Smith was suicidal or a criminal which if true are not supported by evidence and have nothing to do with being shot and killed by the Defendants. None of this evidence is relevant to the case at hand and is inadmissible. This evidence is not admissible,

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN LIMINE - 35
2:22-CV-00609-TSZ

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

FRE 401-403, 608.

<u>Defendants Response</u>

As set forth above, the Court should deny this motion in limine because it lacks specificity. Mr. Smith's April 14, 2019, interaction with Seattle Police is relevant and admissible with respect to the information Officer Beecroft about Mr. Smith and Ms. Nolan because of that encounter. It is not clear what other prior bad acts or interactions with police that Plaintiff is trying to exclude from trial. The Court should deny this motion because it lacks sufficient specificity.

## DEFENDANTS' MOTIONS

### A. Defendants' Motion to Exclude Statements, Questions, or Argument During Voir Dire Referring to Evidence in the Case or to "Anchor" A Suggested Verdict Amount

"*Voir dire* examination serves the dual purpose of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." *Mu'Min v. Virginia*, 500 U.S. 415, 431, 111 S. Ct. 1899 (1991). Voir dire should not be used to prejudice a party, however, and it may be an abuse of discretion to allow voir dire examination on a topic more prejudicial to a party than probative of potential juror bias. *See Scott v. Lawrence*, 36 F.3d 871, 874 (9th Cir. 1994).

The Court should rule in limine that counsel cannot refer to the evidence in the case during voir dire or use voir dire or opening statements to "anchor" a verdict amount. With respect to anchoring, "[n]umerous studies establish that the jury's damages decision is strongly affected by the number suggested by the plaintiff's attorney, independent of the strength of the actual evidence (a psychological effect known as 'anchoring')." *John Campbell, et al., Countering the Plaintiff's Anchor: Jury Simulations to Evaluate Damages*

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

*Arguments, 101 Iowa L. Rev. 543 (2016)*. Such studies generally find that the more plaintiffs ask for, the more a jury will award. Anchoring is a method by which a plaintiff's attorney accustoms jurors to a particular verdict award by repeating that number to normalize it. Anchoring occurs when a plaintiff's attorney suggests in voir dire that he will be asking the jury for a substantial verdict amount (either specific, such as "at least $5 million," or estimated, such as "millions of dollars"), which may be objectively high in comparison to the case's value, and then asks if any jurors would have a problem awarding damages that high. By raising the possibility of that hypothetical verdict amount early in voir dire, the attorney plants the seed that the case has immense worth, and that the other jurors on the panel either do not have an objection to an amount so high or would expect the amount to be that high. This normalizes the high figure and makes the jury comfortable with what would otherwise be an unreasonably high damage award based upon the actual evidence. Even if the jury does not award the anchored number, it may influence the jury to "compromise" by awarding a higher value not otherwise supported by the evidence. In opening and closing, the attorney may even remind the jury of the discussion of case value in voir dire to reinforce the inflated value and/or some alleged agreement from the jury that they would award it. Further, because plaintiff's counsel is the first to speak to the jury about a very high jury demand, the anchoring has occurred before defense counsel can attempt to neutralize it. These anchoring tactics are an attempt to improperly influence jury awards, are not necessary to identify potential juror bias, and should be precluded.

Additionally, voir dire is not the time to discuss the facts of the case or test-run trial themes or awards. Counsel may not allude to personal opinions or beliefs regarding the merits of the case and arguments to the jury. *Stemmons v. Mo. Dep't of Corrections*, 82 F.3d 817,

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN
LIMINE - 37
2:22-CV-00609-TSZ

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

821-22 (8th Cir. 1996). This conduct is specifically prohibited by Rule 3.4(e) of Washington's Rules of Professional Conduct and the American Bar Association's Model Rules of Professional Conduct.  Attorneys may combine these techniques by presenting a "hypothetical" that resembles the case and includes a dollar figure. For example, the attorney may suggest: "What do you think of the statement "police officer shoots first and asks questions later, killing a man trying to surrender and causing millions in damages to his family?"  This type of hypothetic/case theme presentation is improper. First, the hypothetical under this tactic is factually similar to the case at issue, making it improper voir dire to begin with. It also includes an anchoring component, improper for the reasons set forth above.

The Court should prohibit counsel from trying this case in voir dire or desensitizing the jury to a verdict amount counsel intends to ask the jury to award. This type of questioning during voir dire is antithetical to selecting an impartial jury; it is used to prejudice the jury against the defense and towards an incredibly high, often specific, damages award.

Plaintiffs' Response

Courts have concluded that limited questions during *voir dire* relating to damages may be appropriate to evaluate potential juror biases. *See e.g.,  Platt v. Holland Am. Line Inc., No. 2:20-cv-00062-JHC, 2023 U.S. Dist. LEXIS 65276 (W.D. Wash. Apr. 13, 2023)*) ("For example, it may be relevant whether a particular juror is uncomfortable with awarding damages for pain and suffering.") (citing *Chavarria v. Mgmt. & Training Corp., 2018 U.S. Dist. LEXIS 228661, 2018 WL 9538773, at *3 (S.D. Cal. Jan. 22, 2018)* ("Plaintiff may, if he chooses, make limited and appropriate references to potential damages in order to probe any biases potential jurors may have related to civil damages awards.")) It is improper, however, for the parties to discuss particular verdict amounts, ranges of damages, or imply that Plaintiff

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN LIMINE - 38
2:22-CV-00609-TSZ

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

is entitled to a large award, especially in opening statements. *Id.*

Defendants' motion seeks to impose an overly broad restriction that would unfairly limit Plaintiffs' ability to present their case and assess juror biases. Courts disfavor motions in limine that seek to exclude broad categories of evidence, as such motions risk undermining the trial's fairness and efficiency. <u>United States v. Mumma</u>, No. 1:20-cr-00168 JLT SKO, 2024 U.S. Dist. LEXIS 39749, at *2 (E.D. Cal. Mar. 6, 2024).

To the extent Defendants are concerned about potential prejudice, the Court can mitigate such concerns through appropriate jury instructions. Courts routinely instruct jurors to base their decisions solely on the evidence presented at trial and to disregard any statements made during voir dire or opening statements that are not supported by evidence. This approach strikes a balance between the need to assess juror biases and the need to avoid undue prejudice.

### B. Defendants' Motion to Exclude Statements, Questions, or Argument Appealing to "Community Danger"

"An argument in a civil case is improper which appeals to the jurors to place themselves in the position of a litigant and to decide the case based upon what they would then want under the circumstances." *Adkins v. Aluminum Co. of Am.*, 110 Wn.2d 128, 140, 750 P.2d 1257 (1988). A related and similarly impermissible trial tactic is to seek damages indirectly through use of the so-called Reptile Theory, which holds that reptilian brains have the primary function of self-preservation. Plaintiff lawyers sometimes use tactics that attempt to trigger fear and anger to convince the jury that a defense verdict will endanger the jurors and their community and to provoke a verdict in favor of community safety. This tactic often involves (1) *voir dire* questions focusing on community safety and trial as having an effect on community safety, or references to the jury as guardians of the community; (2) statements

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

that Plaintiffs are bringing the lawsuit to protect the public safety or to bring about community change; and/or (3) references in opening statement, closing argument and/or throughout trial to hypothetical harm that might have been caused to people generally, as distinct from the actual harm that was incurred by Plaintiffs, and an underlying suggestion that a Plaintiffs' verdict is necessary to make the community safe. Many jurisdictions, including Washington trial courts, have rejected such tactics. *See e.g. Glover v. State*, No. 10-2-35124-8, 2015 WL 7355966 (Wash. Super. Ct. 2015) (granting motion to "[p]reclude any attempt by plaintiff's counsel to utilize the Reptile Strategy"). The court should preclude such tactics, including any suggestion that the jury should use their verdict to send a message to the City. FRE 401, 402 and 403.

Plaintiffs' Response

The court should deny the motion to the extent that such arguments are not inflammatory or unduly prejudicial. The Ninth Circuit has held that appeals to the jury to act as the "conscience of the community" are not impermissible unless they are specifically designed to inflame the jury. For example, in *People of Guam v. Quichocho*, 973 F.2d 723 (9th Cir. 1992), the Ninth Circuit found that such appeals are permissible in criminal trials unless they are inflammatory.

In *Mooney v. Roller Bearing Co. of Am., Inc.*, 601 F. Supp. 3d 881 (W.D. Wash. 2022), the court denied a motion to exclude "conscience of the community" arguments, provided that such arguments were not presented in an inflammatory manner. The court emphasized that the context in which such statements are made is critical, and precluding them entirely without knowing the context would be premature. *Id.*

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN LIMINE - 40
2:22-CV-00609-TSZ

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

1

**C. Defendants' Motion to Exclude Statements, Questions, or Argument Related to Alleged Racial Animus or Disability Discrimination**

2

3        In her Second Amended Complaint, Plaintiff included allegations related to history

4    racially biased policing in Seattle sometime before 2012, she alleges that Officer Myers "has

5    a history of disproportionately shooting people of color," and she alleges that Mr. Smith was

6    suffering from a mental health crisis during the course of the incident at issue here, and that

7    the responding officers discriminated against him because of his race and/or mental health

8    status. (Dkt. #20, pp. 4-6; 11; 22.) On December 20, 2022, this Court granted Defendants'

9    motion to dismiss Plaintiffs' discrimination claims, finding that the facts pled in the

10   Complaint in sufficient to support her discrimination claims. (Dkt. # 25.) Plaintiff had an

11   opportunity to file an amended complaint to address these factual deficiencies, but she did

12   not do so. (*Id.*)

13

14       Instead, Plaintiff is pursuing Fourth Amendment excessive force claims, which are

15   analyzed under the Fourth Amendment's prohibition against unreasonable seizures. *Graham*

16   *v. Connor*, 490 U.S. 386, 294 (1989); *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1161

17   (9th Cir. 2011). To state an excessive force claim, a plaintiff must allege facts showing that

18   the officer's conduct was "objectively unreasonable in light of the facts and circumstances

19   confronting them." *Graham*, 490 U.S. at 397 (internal citation omitted). In determining

20   whether an officer's conduct is objectively unreasonable, courts must "balance the gravity of

21   the intrusion on the individual against the government's need for that intrusion to determine

22   whether it was constitutionally reasonable." *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th

23   Cir. 2003).

24

25       Under this standard, "[t]he reasonableness of a particular use of force must be judged

26   from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

27

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN
LIMINE - 41
2:22-CV-00609-TSZ

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

hindsight." *Graham*, at 396 (internal citation and quotation marks omitted). The Ninth Circuit has held that the most important factor is "whether the suspect poses an immediate threat to the safety of the officers or others." *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994). In short, "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Id.* at 397 (internal citation and quotation marks omitted).

Mr. Smith's race (or the officer's subjective perspective about his race) is not relevant to any of the claims this jury will be deciding, and it would be highly and unfairly prejudicial to allow Plaintiffs' counsel to make any commentary about his race, ask questions about his race to any of the witnesses, or otherwise suggest to this jury that any of the officers took any action because of Mr. Smith's race. Fed. R. Evid. 401, 402, and 403. The same is true for Mr. Smith's mental health status. Ms. Johnson testified at her deposition that her son was diagnosed with depression (hearsay) and that he was possibly on the bi-polar spectrum (speculation), but there are no witnesses who will be providing any evidence about Mr. Smith's mental health status or that his actions on May 8, 2019, were the result of any mental health diagnoses or condition, as opposed to his significant level of intoxication (he had a BAC of .360) and propensity for violence when he was drinking. Accordingly, the Court should exclude any evidence or argument related to Mr. Smith's race, that he had any specific diagnosed mental health condition, that this actions on May 8, 2019, were a product of a mental health crisis, or that the officers treated him differently than other suspects because of his race or mental status.

Plaintiffs' Response

In *Barnes v. Felix*, 145 S. Ct. 1353, 221 L.Ed.2d 751, 755 (2025) the Court rejected

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN LIMINE - 42
2:22-CV-00609-TSZ

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

the "moment-of-threat" rule stating that approach as improperly narrowing the requisite Fourth Amendment analysis. To assess whether an officer acted reasonably in using force, a court must consider all the relevant circumstances, including facts and events leading up to the climactic moment. *Id.* This Court should allow plaintiff to questions Defendant's and witnesses regarding what information was reported to them leading up to the fatal shooting of Ryan Smith.

There is evidence established in this case that Ms. Nolan reported to Seattle Police Department 911 taker that she had concern that Ryan Smith cut himself and "he needed help." Dkt. 20 at 7:3-4.  Additionally, Defendant Beecroft was made aware weeks prior to the incident that Ryan Smith was suffering from mental health issues and was on medication for those issues.  Dkt. 20 at 22:1-4. This evidence is part of the totality of circumstances that led to the SPD inactions and/or actions that caused the death of Mr. Smith. Unlike his postmortem blood alcohol content and/or intoxication, Mr. Smith's mental health and race were known to the SPD officers prior to shooting Mr. Smith to death on the day of the incident.

### D. Defendants' Motion to Exclude Statements, Questions, or Argument Related to Officer Chris Myers' Prior Police Shootings

Officer Myers has been involved in three prior police shootings between 2010 and 2017.  The first occurred in December of 2010, when Officer Myers responded to a call about a suspect with a gun.  He shot the suspect after another officers tased the suspect and because Officer Myers thought the man was getting ready to shoot him.  As part of an appeal from the criminal prosecution of the suspect Officer Myers shot, the Washington Court of Appeals found that the *Terry* stop was unlawful.  There has never been any finding, by anyone, that Officer Myers' decision to shoot the suspect was unlawful or unjustified.

Officer Myer's second shooting occurred in 2014, after a man shot at him and other

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN LIMINE - 43
2:22-CV-00609-TSZ

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

officers from with a rifle.  Officer Myers received an award after that incident, and there has never been any finding that the shooting was unlawful or unjustified.  The third occurred on April 20, 2017, when Officer Myers was involved in the shooting of Damarious Butts. According to a unanimous King County Inquest jury, Officer Myers shot Mr. Butts after Mr. Butts fired his gun at another officer, striking her, and fired his guy at a third officer, striking him.  The jury determined that all four officers who fired their weapons at Mr. Butts, including Officer Myers, had reason to believe he presented an imminent risk of death or serious bodily injury to the officers or other and that their use of deadly force was justifiable. The jury also unanimously determined all four officers complied with the City's use of force, firearm, and de-escalation policies.  (See the Miller Decl. filed at dkt. #72 for supporting documentation.)

Courts have regularly held that evidence of other unrelated incidents of police misconduct is inadmissible. *Duran v. City of Maywood*, 221 F.3d 1127, 1132-33 (9th Cir. 2000) (evidence of another unrelated shooting involving the officer defendant was not admissible as unduly prejudicial); *Castro v. Cnty. of Los Angeles*, 2015 WL 4694070, *11-*12 (C.D. Cal. Aug. 3, 2015) (evidence of police killings of civilians in other cases and the protests related thereto was inadmissible); *Puckett v. Zamora*, 2015 WL 3869662, *2 (E.D. Cal. June 23, 2015) (evidence of other unrelated incidents were inadmissible).  There is no relevant or non-prejudicial reason to introduce this testimony, and the Court should exclude it from trial.  See FRE 401, 402, 403, 404(b).

<u>Plaintiffs' Response</u>

Under Rule 404(b), evidence of prior acts is admissible if it is offered for a purpose other than to show character or propensity, such as to prove intent, motive, or absence of

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN
LIMINE - 44
2:22-CV-00609-TSZ

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

mistake. *United States v. Cunningham,* No. 93-30317, 1994 U.S. App. LEXIS 23976 (9th Cir. Aug. 31, 1994), *United States v. Becerra*, No. 99-50271, 2000 U.S. App. LEXIS 8420 (9th Cir. Apr. 25, 2000). The Ninth Circuit applies a four-part test to determine admissibility under Rule 404(b): (1) whether there is sufficient evidence to conclude that the prior act occurred; (2) whether the evidence is too remote in time; (3) whether the prior act is similar to the act at issue; and (4) whether the prior act is offered to prove a material element of the case *United States v. Rogers*, No. CR23-112-BLG-SPW, 2024 U.S. Dist. LEXIS 166606 (D. Mont. Sep. 16, 2024).

Evidence of prior shootings by the officers is admissible under Rule 404(b) because it is relevant to issues such as intent, motive, or absence of mistake in the use of force. The Ninth Circuit has held that Rule 404(b) is a "rule of inclusion," such that "[e]vidence of other crimes or acts is admissible under Rule 404(b), 'except where it tends to prove *only* criminal disposition.'" *United States v. Ayers*, 924 F.2d 1468, 1473 (9th Cir. 1991) (internal citations and quotation marks omitted) (emphasis in original). "[I]f evidence of prior crimes bears on other relevant issues, 404(b) will not exclude it." *United States v. Cruz-Garcia*, 344 F.3d 951, 954 (9th Cir. 2003). The underlying facts and circumstances of the conviction are admissible, subject to the restrictions of Rule 403. *United States v. Mixon*, No. CR-14-00631-001-TUC-JGZ, 2015 U.S. Dist. LEXIS 195401, at *4 (D. Ariz. Dec. 2, 2015)

Under Rule 403, the probative value of the evidence outweighs any potential prejudice. Here, the evidence is highly probative because it directly relates to the officers intent and the reasonableness of their actions. Any potential prejudice can be mitigated through limiting instructions to the jury, as the Ninth Circuit has recognized that such instructions are an effective way to prevent unfair prejudice. *Estate of Alderman v. City of*

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN LIMINE - 45
2:22-CV-00609-TSZ

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

*Bakersfield*, No. 1:16-cv-00994-DAD-JLT, 2018 U.S. Dist. LEXIS 146556 (E.D. Cal. Aug. 28, 2018).

**E. Defendants' Motion to Exclude Statements, Questions, or Arguments Related to Officer Myer's Prior Discipline**

Officer Myers has been disciplined for not planning and/or failing to de-escalate on two occasions. The first involved an incident where he was one of only two officers available to respond to an active situation involving an armed robber and an unarmed store manager. He responded to help the store manager before a second backup officer arrived, leading to discipline. The second involved criticism of Officer Myers for cutting a tent while holding OC spray, a Taser, and a knife without any shielding or an arrest team in place. This evidence, and evidence of any other "prior bad acts," should be excluded from trial because (1) they are not relevant to Plaintiffs' excessive force, negligence, or outrage claims in this situation, which is factually different; (2) even if there is some limited probative value to this evidence, it is inadmissible prior bad act propensity evidence; and (3) any limited probative value is outweighed by the unfair prejudice of allowing this type of propensity evidence to suggest that Officer Myers must have failed to plain for failed to de-escalate the situation at issue in this lawsuit. Fed. R. Evid. 401, 402, 403, and 404(b)(1). If Plaintiff plans to offer this evidence in to support an actionable *Monell* claim, and this Court finds that the evidence would be admissible despite the arguments made here, it is support for a bifurcation of the Monell claim until after the jury determines whether there was a constitutional violation or negligence based upon facts that are fairly admissible to those issues.

Plaintiffs' Response

Similar argument as above. The fact Defendant Myers was disciplined for failure to plan and failure to de-escalate are very close in relation to the current matter. Plaintiff here

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN LIMINE - 46
2:22-CV-00609-TSZ

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

alleges as part of the totality of the facts that Officer Myers failing to plan and failing to de-escalate is a proximate cause of the death of Mr. Smith. The 9th Circuit in its decision in this matter stated "The officers made no attempt to talk to Smith or otherwise de-escalate the situation." Dkt. 81 at 13. Furthermore, this information is relevant to *Monell* issues.

### F. Defendant's Motion to Exclude Statements, Questions, or Arguments Related to Officer Myer's Mental Health History

Plaintiffs' counsel inquired into Officer Myer's mental health history at his deposition. Officer Myers testified that after each of his four prior shooting incidents, he experienced stress and anxiety, moral injury, and emotional distress. He describes his symptoms as suffering from Post Traumatic Stress Disorder, but he has availed himself to mental health services and has never been diagnosed with this condition. The City of Seattle also requires officers involved in shootings to meet with a Department-approved mental health professional who must determine that the officer is mentally fit for duty before he or she can return to work. (See Myers Dep, attached as Ex. B to dkt #72 for supporting testimony.) Because the test under both state and federal law rests upon the objective reasonableness of Officer Myer's conduct, his mental health history is not relevant and would be unfairly prejudicial if allowed in this case. *See Jones v. City of Oakland*, No. 12–1416, 2013 WL 4102228, at *2 (N.D. Cal. Aug. 12, 2013) (information regarding a defendant police officer's mental state was irrelevant under *Graham* because his "private mental health information is not necessary to determine whether his use of force against Plaintiff was constitutional.").

<u>Plaintiffs' Response</u>

In the 9th Circuit, evidence of a police officer's mental health, including PTSD, has been deemed admissible when it is relevant to the officer's credibility or ability to accurately

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

perceive and recall events. For example, in *Lam v. City of Los Banos*, 976 F.3d 986 (9th Cir. 2020), the court allowed evidence of Officer Acosta's PTSD diagnosis because it was probative of his credibility and his ability to perceive and react during the incident. Testimony indicated that PTSD could lead to "intense psychological distress," "hypervigilance," and "impulsive reactions," which were relevant to assessing the officer's actions during the incident. *Id.*

Additionally, the court in *Lam* noted that even if the PTSD diagnosis was made years before the incident, it could still be admissible if it bore on the officer's credibility or ability to perceive reality. *Id.*

### G. Defendants' Motion to Exclude Statements, Questions, or Arguments related to the Seattle Consent Decree

On July 27, 2012, the City of Seattle entered into a stipulated settlement agreement with the Department of Justice (DOJ), that included the City's commitment to working with the DOJ on implementing changes to, among other things, its use of force policies; crisis intervention policies; and police oversight through additional supervision, an early intervention system, and enhancement of the Office of Professional Accountability (OPA). This consent agreement included a federal Monitor, Merrick Bobb, to whom the Seattle Police Department agreed to submit policies, procedures, training curricular, and training manuals for review, comment, and approval. The City and the Monitor would then submit the draft policies and training materials to District Court Judge James L. Robart, who would ultimately determine whether they are congruent with Constitutional requirements, embody best practices, and reflect the policies and practices of the finest law enforcement agencies in the country.  The policies, procedures, training, and police oversight Plaintiff is challenging here underwent this rigorous review process, with Judge Robart approving the final jointly

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN LIMINE - 48
2:2-CV-00609-TSZ

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

proposed training plan on January 3, 2017.  Additionally, as of April 30, 2014, nearly all 1,300 sworn Seattle police officers had received interim training on use of force policies approved by Judge Robart. Then, on June 10, 2014, Judge Robart approved the use of a Use of Force Instructor Notebook to provide detailed training guidance, exercises, and evaluation standards for use of force training, including training on use of force core principles, less lethal tools, de-escalation, contact and cover techniques, firearm skills, first aid and team tactics, pending final implementation of approved changes to the City's use of force training.

The City of Seattle's agreement to participate in the consent decree process and the actions it took in response could only be relevant if this Court were to find a viable *Monell* claim against the City, and even then, it would depend upon the Court's finding.  The Consent decree is not relevant to the involved officers' actions on May 8, 2019.  Counsel need not refer to this DOJ investigation or consent decree process to elicit testimony related to Seattle Police Department policies, procedures, and training (to the extent otherwise relevant and admissible), and the Court should therefore exclude reference to DOJ investigation and consent decree under FRE 401, 402, 403, and 404(b).

Plaintiffs' Response

Agreed, pending *Monell* decision.

**H. Defendant's Motion to Exclude Statements, Questions, or Arguments Related to Officer Myer's Participation in a Lawsuit Related to DOJ Use of Force Policies**

Officer Myers was one of the Seattle Police Officers who joined as a plaintiff in a lawsuit against the City related to changes in the use of force policy because of the consent decree.  Officer Myers specifically took issue with one change to the use of force policy (not dictated by the consent decree itself), that would have eliminated an intermediate force option

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

(a taser) available to officers in certain situations where it would be untenable to use less force and untenable to use more force. The City rectified that part of the policy. Officer Myer's personal feelings about this portion of the City's use of force policy is not relevant to the current lawsuit where, indeed, Plaintiff is arguing that Officer Myers should have used his taser as an intermediate force option under the circumstances. There is no reason to offer evidence of Officer Myer's limited participation in this lawsuit other than to attempt to suggest that he holds a personal disdain for use of force policies or that he is the type of officer who wants fewer restrictions on police in use of force situations. The Court should exclude any reference to this lawsuit under FRE 402, 402, 403, and 404(b).

Plaintiffs' Response

The Defense's own response notes that "Officer Myers specifically took issue with one change to the use of force policy [...] that would have eliminated an intermediate force option (a taser) available to officers in certain situations where it would be untenable to use less force and untenable to use more force." This is precisely why Officer Myers' prior position is relevant and not unduly prejudicial. In this case, Officer Myers argued in his deposition that it was improper for him to use a taser in this circumstance because it was untenable, yet after the incident in a statement to SPD, Officer Muoio (one of the other officers involved) said:

> Um I think in my head at that point, I might've even been thinking that hey, I should probably get a Taser out. I don't, I don't know if I did pull my Taser out. I, I honestly couldn't tell you um I believe I had my gun in my hand the whole time. Um I, I can't be, I don't know I, I couldn't tell you what was in my hand I, I want to say my gun was but I, in my head I was thinking, Taser, knife, Taser, knife um.

Rome Declaration, Ex 3, SPD 001260.

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN
LIMINE - 50
2:22-CV-00609-TSZ

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

**I.  Defendants' Motion to Exclude Statements, Evidence, or Argument that Officer Myers should not have been working on May 8, 2019**

Through discovery, Plaintiffs' counsel has suggested that the City should not have allowed Officer Myers to be working as a patrol officer, because he was somehow not mentally fit to make split-second decisions when faced with situation like this one.  This Court has already dismissed Plaintiffs' training/supervision claim, and to the extent that there is even evidence to support this argument that it admissible under Fed. R. Evid. 401 and despite Fed. R. Evid. 403, the City submits that it should not be part of the current trial.  If the Court denies Defendants' motion for summary judgment dismissal of Plaintiffs' *Monell* claims against the City, Defendants will move to bifurcate the *Monell* claim for a second trial, if one is necessary.

Plaintiffs' Response

The jury should decide whether the City should have allowed officer Myers to be working as a patrol officer after he had shot three people in less than seven years, prior to this shooting, and had expressed a desire to be taken off patrol shifts prior to this incident.

**J.  Defendants' Motion to Exclude Statements, Evidence, or Argument that the Officers met with attorneys and/or peer support after the shooting**

Police officers have a constitutional right to counsel as part of the post-shooting criminal investigation process.  They also have a right to speak with peer support in a confidential setting pursuant to RCW 5.60.060(6).  These conversations are privileged and confidential.  The fact that the conversations occurred, especially because they occurred as part of the standard procedure following an officer-involved shooting (a procedure these individual officers did not create), is not relevant or probative.  The Court should exclude any statements, questions, or argument about the fact that the involved officer had access to legal

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN LIMINE - 51
2:22-CV-00609-TSZ

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

counsel after the shooting or that they spoke to peer support.  See FRE 401, 402, and 403.

Plaintiffs' Response

Defendants may claim that these consultations are protected by attorney-client privilege or some form of peer support privilege, such privileges are not absolute and do not extend to the mere fact that meetings occurred. ER 501 provides that privilege claims are governed by common law as interpreted by United States courts.

The attorney-client privilege protects only confidential communications made for the purpose of obtaining legal advice, not the fact that a meeting occurred or the general subject matter discussed. Similarly, any peer support privilege, to the extent recognized, would be limited in scope and would not categorically bar all evidence of such consultations. Defendants have not established that all evidence related to these consultations falls within the scope of any recognized privilege.

The evidence at issue has significant probative value in assessing the credibility of the officers' testimony and understanding the development of their accounts of the incident. This probative value is not substantially outweighed by any risk of unfair prejudice. The jury is entitled to know the circumstances under which the officers' statements were made and any factors that may have influenced their recollection or reporting of events.

"Any party, including the party that called the witness, may attack the witness's credibility." ER 607. Evidence of post-shooting consultations may be relevant to impeach the officers' testimony by showing potential influences on their statements or inconsistencies in their accounts. The plaintiff has the right to explore these issues through cross-examination and the presentation of relevant evidence.

Defendants' Motion in Limine to exclude evidence, testimony, or argument regarding

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN
LIMINE - 52
2:22-CV-00609-TSZ

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

the officers' meetings with attorneys and/or peer support personnel after the shooting should be denied.

### K. Defendants' Motion to Prohibit Any Suggestion the Entry into the Apartment was Unlawful

Plaintiff did not bring a claim for unlawful entry, nor is there evidence that the involved officers were unlawful in the manner in which they announced their presence or forced open the door to apartment. The Court should prohibit any suggestion to the contrary. See FRE 401, 402, and 403.

Plaintiffs' Response

Plaintiff can agree not to suggest the entry was unlawful as SPD did not actually enter the apartment until after the fatal shooting – Mr. Smith died inside his own unit with officers about 5' outside his door. However, Plaintiff should be able to argue that the breach of the doorway was not done pursuant to policy and/or best practice, and that the circumstances of the breach constituted negligence. Further, the manner the entry was made is a part of the totality of the circumstances leading up to the shooting and is relevant to the issues being decided. *Barnes v. Felix*, 145 S. Ct. 1353, 221 L.Ed.2d 751, 755 (2025). This motion should be denied.

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN LIMINE - 53
2:22-CV-00609-TSZ

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

DATED:  July 2, 2025

KEATING, BUCKLIN & McCORMACK, INC., P.S.

By:  */s/ Ann E. Trivett*
Ann E. Trivett, WSBA #39228
Thomas P. Miller, WSBA #34473
*Attorneys for Defendants*
1201 Third Avenue, Suite 1580
Seattle, Washington 98101
Phone: (206) 623-8861
Fax:    (206) 223-9423
Email: atrivett@kbmlawyers.com

SULLIVAN LAW GROUP, PLLC

*/s/ Brian Sullivan*
BRIAN M. SULLIVAN, WSBA #38066
Attorney for Plaintiff
2932 Hoyt Avenue
Everett, WA 98201
Telephone: (425) 322-1076
Email: brian@sullivanpllc.com

LAW OFFICE OF JOSEPH ROME, INC., P.S.

*/s/ Joseph Rome*
JOSEPH ROME, WSBA #37651
Attorney for Plaintiff
4055 Lake Washington Boulevard N.E., Suite 240
Kirkland, WA 8033
Telephone: (425) 429-1729
Email: jrome@josephromelaw.com

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN
LIMINE - 54
2:22-CV-00609-TSZ

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX: (206) 223-9423

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Attorneys for Plaintiffs**

Brian M. Sullivan, WSBA #38066
Allen Schwenker
SULLIVAN LAW GROUP, PLLC
2932 Hoyt Avenue
Everett, WA  98201
Phone: 425-322-1076
Email:   brian@sullivanpllc.com;  sully@sullivanpllc.com;  kris@sullivanpllc.com; cinthia@sullivanpllc.com;
allen@sullivanpllc.com

**Attorneys for Plaintiffs**

Joseph Rome, WSBA #37651
LAW OFFICE OF JOSEPH ROME, INC., P.S.
4055 Lake Washington Blvd NE, Suite 240
Kirkland, WA  98033
Phone: 425-429-1729
Email:  jrome@josephromelaw.com

DATED:  July 2, 2025

/s/ Sydney McCrorie
Sydney McCrorie, *Legal Assistant*

THE PARTIES' JOINT SUBMISSION RE MOTIONS IN
LIMINE - 55
2:22-CV-00609-TSZ

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
1201 THIRD AVENUE, SUITE 1580
SEATTLE, WASHINGTON 98101
PHONE: (206) 623-8861
FAX:  (206) 223-9423